FILED
98 OCT -8 PM 3:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT - 8 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| AUDIE BARGER, et. al., ] | |
| ] | |
| Plaintiff(s), ] | |
| ] | |
| vs. ] | |
| ] CV 98-N-0712-W | |
| HARMONY LEASING d/b/a/ ] | |
| CONSOLIDATED DEBIT ] | |
| COMPANY, et al., ] | |
| ] | |
| Defendant(s). ] | |

**Memorandum of Opinion**

**I.   Introduction.**

This civil action was originally brought in the Circuit Court of Tuscaloosa County, Alabama, and was removed by the defendants to this court on the basis of federal question jurisdiction. Plaintiffs Audie and Kim Barger (the Bargers) brought suit against Harmony Leasing d/b/a Consolidated Debit Company (Consolidated Debit) and MCI Telecommunications Corporation (MCI).[1] The Bargers' claims against the defendants are based on (1) breach of contract; (2) misrepresentation; and (3) negligence. Because the plaintiffs never dealt with MCI directly, each claim against MCI is premised on MCI's alleged agency relationship with Consolidated Debit.

---

[1] The action was originally brought against MCI Communications Corporation, but by stipulation MCI Telecommunications Corporation has been substituted as the proper party defendant. Consolidated Debit has apparently never been properly served. *Notice of Removal*, at 13-14.

The court presently has for consideration a motions to stay proceedings and compel arbitration, filed by defendant MCI on August 17, 1998. The motion has been briefed by the parties and is ripe for decision. Upon due consideration, the motion will be granted.

## II.     Background.

On July 15, 1996, the plaintiffs entered into a contract with Consolidated Debit for the purchase of prepaid MCI long distance cards and dispensers for the cards. *Complaint*, ¶ 5. The contract contained the following arbitration provision:

> The parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled, shall be determined solely and exclusively by arbitration in accordance with the rules of the American Arbitration Association . . . .

*Purchase Agreement executed July 15, 1996* (Exhibit A to MCI's Motion to Compel Arbitration and for Stay of Proceedings).

The plaintiffs contend that Consolidated Debit made several promises and representations in connection with the contract, and that those promises have now been breached and the representations found to be untrue. The plaintiffs therefore filed suit in the Circuit Court for Tuscaloosa County, Alabama, on February 12, 1998, asserting claims against Consolidated Debit, along with MCI as its principal in an agency relationship, for breach of contract and fraud. The plaintiffs have also asserted a claim directly against MCI for negligent supervision of its agent.

Defendant MCI then removed the case to this court on March 25, 1998, and answered the complaint. Plaintiffs moved to remand, but after briefing by both sides and oral argument the motion was withdrawn on June 17 in exchange for several stipulations

2

by MCI. MCI and the Bargers then made their initial disclosures, as required by Rule 26 of the Federal Rules of Civil Procedure. MCI contends that it was unaware of the existence of the arbitration provision until July 30, 1998, when it received a copy of the Purchase Agreement as part of plaintiffs' initial disclosures. On August 17, 1998, MCI filed its motion to compel arbitration, currently before the court.

### III.    Motion to Stay Proceedings and Compel Arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1997). The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . shall on application of one of the parties stay the trial of the-action until such arbitration has been had in accordance with the terms of the agreement . . . .

*Id.* § 3. It is well-settled that the provisions of the FAA represent a national policy strongly favoring arbitration. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). In enacting the FAA, Congress manifested a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (*quoting Moses H. Cone*, 460 U.S. at 24). The Act's purpose "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at

3

English common law and had been adopted by American courts, and to *place arbitration agreements upon the same footing as other contracts.*" *Id.* at 24 (emphasis added).

Whether an arbitration provision is enforceable, as opposed to the merits of the underlying dispute, is a question for the court. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067 (11th Cir. 1993).

In its motion, MCI asks the court to stay all proceedings and compel the plaintiffs to arbitrate all their claims against it. The plaintiffs do not dispute the facial validity of the arbitration agreement they executed, or the applicability of that agreement to the claims in this case. They contend instead that the agreement does not apply because MCI's actions in this case have impliedly waived its right to arbitrate.

Given the strong federal policy favoring enforcement of arbitration agreements, a finding of waiver is not favored in the federal courts and the party asserting waiver bears a heavy burden of proof. *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1543); *Knorr v. Brake Corp. v. Harbil, Inc.*, 556 F. Supp. 489 (N.D. Ill. 1983). Thus, a party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *See NCR Credit Corp. v. Reptron Electronics*, 863 F. Supp. 1561, 1565 (M.D. Fla. 1994) (citing *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

The Eleventh Circuit holds that "[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and

4

this participation results in prejudice to the opposing party." *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate. *Id.* (citing *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).

Applying these considerations to the facts in this case, the court finds that MCI has not waived its right to arbitration. First, it seems clear that MCI was not aware of its right to arbitrate its claims against the plaintiffs until just before it acted to enforce this right. The plaintiffs contend that MCI should be charged with knowledge of the clause because its purported agent, Consolidated Debit, presumably had knowledge of it. This court is not convinced.

Even under agency law, the imputation of knowledge from agency to principal is not a rigid rule. "[T]he rule is subject to many qualifications which can only be understood in view of the rule's purposes." *First Alabama Bank, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1060 n.8 (11th Cir. 1990). The rule is designed to "avoid the injustice which would result if the principal could have an agent conduct business for him and at the same time shield himself from the consequences which would ensue from knowledge of conditions or notice of the rights and interests of others had the principal transacted his own business in person." *Id.* Another overlapping justification for the rule involves the need to keep both agents and principals alert to the need to transfer relevant information between themselves. Even if the rights of others are not implicated, a principal should not sit by in intentional ignorance, when an agent has relevant information.

However, neither of these justifications support application of the rule here. The information about which MCI allegedly should have had notice related not at all to the rights of others, but only to its own right to compel arbitration. The court sees no significant unfairness to plaintiffs in the brief delay caused by MCI's lack of information. More importantly, there was simply no reasonable way for MCI to get the information. This was not a case of intentional ignorance or even mistake or inattention. MCI did not need to know about the arbitration provision until it was sued, and by that time its alleged agent had dissolved and no longer existed. To make matters worse, the connection between MCI and Consolidated Debit was loose, at best. The relevant contract was formed between plaintiffs and Consolidated - MCI was not even a party. The parties dispute whether Consolidated Debit can be considered MCI's agent or not. Even if it was, the relationship was apparently not close enough that MCI could be expected to know exactly what Consolidated was up to, and what terms its contracts contained. As the Alabama Supreme Court has observed

> Whether notice to the agent constitutes notice to the principal depends upon the relationships of the parties. In the law of contracts, the rule of constructive notice is said to arise from the duty that the agent has to make disclosures to the principal. *However, this is not a hard and fast rule. Where the facts do not warrant an expectation that the agent will make a disclosure to the principal, the justification for the rule does not arise and the rule does not apply.*

*National Union Fire Ins. Co. v. Lomax Johnson Ins. Agency, Inc.*, 496 So.2d 737, 739 (Ala. 1986) (emphasis added). This court cannot see how MCI could be expected to learn of the arbitration agreement, at least until the litigation was filed, by which point Consolidated

6

Debit had vanished. "It is not reasonable to expect the unexpected." *Id.* Therefore the court will not impute knowledge of the arbitration provision to MCI.

Based upon the evidence currently before the court, MCI cannot be said to have known of its right to arbitrate its collection dispute. Without knowledge, there is no waiver. *See Hoffman Const. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (requiring knowledge of the right to compel arbitration prior to a finding of waiver); *cf. Putman Const. & Realty Co. v. Byrd*, 632 So. 2d 961, 965 (Ala. 1992) (stating that "under Alabama law, a waiver requires the *intentional* relinquishment of a known right, and that intentional relinquishment must be shown in an unequivocal manner") (emphasis added). Therefore arbitration is proper.

Even if MCI had known of the provision, the court concludes that the minimal litigation activities involved here are not sufficient to trigger waiver. MCI's actions neither substantially invoked the litigation process, nor significantly prejudiced the plaintiffs. The standard plaintiffs must meet is a relatively stiff one. *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1543). Delay alone is not enough, see, *e.g., Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991) (no waiver despite thirteen month delay), nor is participation in discovery sufficient, *see Stone*, 898 F.2d at 1543, particularly when the same discovery could have been obtained during arbitration. *See, e.g., Leadertex v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995).

The results of MCI's failure to call for arbitration more swiftly can be distilled into the following three categories: 1) MCI removed the case; 2) the parties exchanged initial disclosures under Rule 26; and 3) six months passed. The six month delay, unfortunately

fairly brief in the course of modern litigation, is not enough to support a finding of waiver. Nor is the exchange of Rule 26 discovery, which is not particularly burdensome and, for the most part, transfers basic information the parties would have been expected to seek and discover during arbitration anyway.[2] The plaintiffs do not actively contest these conclusions, and argue instead that the act of removal, consisting as it does of an affirmative choice to seek a particular non-arbitral forum, itself constitutes a waiver of the right to arbitrate. The court thoroughly disagrees.

Plaintiffs discuss two cases to support this broad proposition, one from the Seventh Circuit, *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) (Posner, J.), and one from the Supreme Court of Alabama, *Ex parte Hood*, 712 So. 2d 341 (Ala. 1998),which relied heavily on the Seventh Circuit's analysis. Neither case is controlling, and neither is particularly persuasive, at least when given the broad interpretation urged by the plaintiffs. The crux of Judge Posner's logic in *Cabinetree* is that, by choosing a federal forum through the removal procedure, a defendant "manifest[s] an intention to resolve the dispute through the processes of the federal court." *Cabinetree*, 50 F.3d at 290. *Hood* reiterated the same logic, noting that "the defendant . . . responded to the plaintiff's complaint not by seeking enforcement of the arbitration agreement but by invoking the judicial process, by removing the case to federal court." *Hood*, 712 So. 2d at

---

[2] The mandatory nature of Rule 26 disclosures underscores this conclusion. A defendant does not obtain Rule 26 disclosures because he or she wants them and actively seeks them, thus invoking the tools of court litigation. The defendant instead obtains this discovery as a matter of course, because a certain amount of time has passed since the answer. The court cannot conclude that Rule 26 was intended to provide an arbitrary limit on the time within which a motion for arbitration can be made. In the absence of evidence suggesting that a party delayed in bad faith in order to obtain Rule 26 disclosures before going to arbitration, discovery exchanged as required by the rule should have little, if any, impact on the waiver analysis.

345. *Hood* also noted that removal puts plaintiffs to the costs of filing and arguing a motion to remand, costs that plaintiff "would have been spared had [defendant] invoked the arbitration clause earlier." *Id.* at 343-44.

While recognizing that the process of removal may result in some cost and delay, the court feels that it would be inappropriate to put defendants to an election between arbitration and federal court jurisdiction. Under the Eleventh Circuit's test, the key question is whether the party seeking to arbitrate has "participate[d] in litigation to a point inconsistent with an intent to arbitrate." *Morewitz v. West of England Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). In the court's view, removal is entirely consistent with an intent to arbitrate. The thirty day deadline for removal rushes by rapidly. If a defendant once gives up the chance to remove, that chance is gone forever. Removal is, in essence, a backup plan. After all, not all motions to compel arbitration are successful and, if a defendant's is not, there is nothing wrong with wanting to wind up in federal court instead of state court.[3] The court does not regard planning for such a contingency as necessarily inconsistent with the intent to arbitrate. Removal is therefore just one circumstance among many to be considered in assessing waiver, and may not be a particularly important one at that.[4]

---

[3] The court would be less than honest if it did not note the possibility that defendants may well remove to federal court precisely *because* they want to arbitrate. Courts in many states, including Alabama's, have a long history of resistance to arbitration. The court is aware that many members of the defense bar still consider federal courts more receptive, on average, to arbitration arguments than state courts are. *See Hood*, 712 So. 2d 346 (discussing a similar argument). Whether this is true or not, it provides another reason for concluding that the decision to remove is not necessarily at odds with the desire to arbitrate.

[4] The court notes that it is not at all sure that the Seventh Circuit and the Alabama Supreme Court disagree. Despite rather broad language about invoking the federal forum, both *Cabinetree* and *Hood* discussed several other circumstances which led them to a finding of waiver, including the usual suspects of delay, extensive

9

This court's conclusion is bolstered by a number of decisions from a wide variety of other federal courts, finding no waiver and enforcing arbitration even after removal. For example, in a Fifth Circuit case with very similar facts, the court concluded that a defendant who removed the action to federal court, filed and litigated a motion to dismiss, and exchanged discovery, had not waived arbitration. As here, the defendant "filed its motion for a stay shortly after it actually discovered that the dispute was arbitrable."[5] *Williams v. Cigna Financial Advisors*, 56 F.3d 656, 661 n.3 (5th Cir. 1995). The same result has held true even when defendants were well aware of the arbitration clause at the time they removed. *See, e.g., Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d 777 (3d Cir. 1975); *James Eckmann Assoc. v. ABC Int'l Traders, Inc.*, 1995 WL 324555, at *2 (N.D. Ill. 1995); *M & I Electronic Industries, Inc. v. Rapistan Demag Corp.*, 814 F. Supp. 545 E.D. Tex. 1993). There is, in short, no incompatibility between removal and arbitration.

Viewing the circumstances as a whole, the court can find no action by MCI which manifested an intent inconsistent with enforcement of its arbitration rights, and no significant prejudice to defendants. An examination of the life history of the case reveals no heavy discovery, and no long breaks or delays which the court can say could have been

---

discovery, etc. Both also noted that removal would not constitute a waiver if the defendant moved for a stay immediately after removal. *Cabinetree*, 50 F.3d at 390; *Hood*, 712 So. 2d at 346. At least one district court within the Seventh Circuit has concluded that *Cabinetree* should not be read as a bright line rule that removal equals waiver. *James Eckmann Assoc. v. ABC Int'l Traders, Inc.*, 1995 WL 324555, at *2 (N.D. Ill. 1995) (no waiver when motion to compel arbitration was filed a month after case was removed). The court therefore suspects that these cases do not stand for the proposition that removal alone is enough for waiver. While *Hood* and *Cabinetree* may place more emphasis on the removal decision than this court finds appropriate, the difference between the approach taken by those cases and the approach taken here is one of degree, not kind.

[5] As is the case here, the court rejected an argument that the defendant "should have known" about the clause earlier.

avoided if MCI has acted earlier. The case was filed and the complaint served. Within thirty days thereafter, defendant removed. As discussed above, MCI had to do this quickly, and had no time to seek to arbitrate in state court if it was to secure a federal forum. It also had a legal right to remove, and ample reasons to do so even if it desired to arbitrate. The parties then engaged in the usual post-removal remand battle. Until this dispute was resolved, of course, the court would not have been willing to deal with an arbitration issue. The time and effort used in disputing this court's jurisdiction is, unfortunately, a fact of life in federal litigation, and the resulting several month delay in this case was the inevitable consequence of MCI's exercise of its right to remove, not a byproduct of any delay in seeking arbitration.

It was only after the remand dispute was resolved on June 17 that MCI had its first real opportunity to raise the arbitration issue. It delayed only two months in doing so. This two months, and the minor discovery mandated by Rule 26, is about the only consequences of MCI's failure to act earlier that the plaintiffs have a legitimate right to complain about. This is simply not enough to sustain the heavy burden required to show waiver. MCI is entitled to arbitration on the claims against it.

The court is left with something of a dilemma because, while neither party has addressed the issue, there is another defendant in the case. Consolidated Debit is still a named defendant, although it apparently has not been properly served. Only MCI has participated in this case, and the plaintiffs have actively pursued only it. Naturally, Consolidated Debit has filed no motion to arbitrate. Nonetheless, the court feels the best approach is simply to pack all of the inert claims against Consolidated Debit off to

arbitration along with the claims against MCI, with which they are inextricably linked. In the alternative, the court will be happy to dismiss these claims without prejudice, if the plaintiffs would prefer and so notify the court.

### IV. Conclusion.

Accordingly, MCI's motion to stay all proceedings and compel arbitration will be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___8th___ of October, 1998.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE